DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Responding to a dispatch about a potential drunk driver, Officer Christopher Neal of the Macedonia Police Department stopped Glenn L. Stanley's car after he saw Mr. Stanley weave and cross the center white line that divided the lanes of the highway on which Mr. Stanley was driving. After Mr. Stanley failed field sobriety tests and refused a breathalyzer test, Officer Neal arrested him. A jury convicted Mr. Stanley of operating under the influence and operating under the influence with prior specification. The trial court sentenced him to consecutive four and three year prison terms, including three years and two months of mandatory prison time. This Court affirms because Officer Neal had reasonable suspicion to stop Mr. Stanley's car, and because the trial court did not abuse its discretion when it imposed his sentence. *Page 2 
 FACTS {¶ 2} In the early hours of November 13, 2006, a police dispatcher told Officer Neal that there was a suspected drunk driver heading northbound on Interstate 271. The person who had called the dispatcher had said that a possibly intoxicated driver had almost struck his vehicle and that the driver was driving a black Ford Taurus. He also gave the dispatcher the car's license plate number. The caller remained on the line as Officer Neal caught up to the car, continuing to update the dispatcher about the car's location. When Officer Neal did catch up to the car, he pulled behind it and observed it. After Officer Neal saw the car touch or go over the white line that separated the two lanes of traffic two or three times, he activated his overhead lights, stopped the car, and approached its driver, Mr. Stanley.
 {¶ 3} After Mr. Stanley failed field sobriety tests and refused to take a breathalyzer test, Officer Neal cited him for operating a motor vehicle under the influence, refusing to take a breathalyzer with prior convictions, driving under an OMVI suspension, and failure to drive in marked lanes. The Grand Jury indicted him for operating under the influence, operating under the influence with prior specification, and lanes of travel/weaving. The State later dismissed the lanes of travel/weaving charge.
 {¶ 4} Mr. Stanley moved to suppress the evidence obtained as a result of the traffic stop, arguing that, because Officer Neal stopped him based on an unverified tip by an unsubstantiated informant, he did not have a reasonable and articulable suspicion. Following an evidentiary hearing, the trial court denied the motion, concluding that Officer Neal "had reasonable suspicion to stop [Mr. Stanley's] vehicle after receiving a complaint from a citizen regarding possible drunk driving coupled with the officer's own observations of the Defendant's car driving over the line on at least two (2) occasions." *Page 3 
 {¶ 5} A jury convicted Mr. Stanley of operating under the influence and operating under the influence with prior specification. The trial court sentenced him to four years in prison with sixty days of mandatory prison time on the operating under the influence charge and to a mandatory three year prison term for operating under the influence with prior specification. He ordered the sentences to run consecutively. Mr. Stanley has appealed, assigning two errors.
 REASONABLE SUSPICION {¶ 6} Mr. Stanley's first assignment of error is that the trial court incorrectly denied his motion to suppress. He has argued that Officer Neal did not have reasonable suspicion to initiate a traffic stop. A motion to suppress evidence presents a mixed question of law and fact.State v. Burnside, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. A reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id., but see State v.Metcalf, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." Burnside, 2003-Ohio-5372, at ¶ 8.
 {¶ 7} "A police officer may stop a car if he has a reasonable, articulable suspicion that a person in the car is or has engaged in criminal activity." State v. Kodman, 9th Dist. No. 06CA0100-M,2007-Ohio-5605, at ¶ 3 (citing State v. VanScoder, 92 Ohio App. 3d 853,855 (1994)). "[He] must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry v. Ohio, 392 U.S. 1, 21
(1968). "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of *Page 4 
reasonable caution in the belief that the action taken was appropriate?"Id. at 21-22 (quoting Carroll v. United States, 267 U.S. 132, 162
(1925)).
 {¶ 8} Whether a police officer had "an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture — a totality of the surrounding circumstances." State v.Andrews, 57 Ohio St. 3d 86, 87 (1991) (citing United States v.Cortez, 449 U.S. 411, 417-18 (1981); State v. Bobo, 37 Ohio St. 3d 177
(1988)). "[The] circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Id. at 87-88. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement."Id. at 88.
 {¶ 9} The driver who called the dispatcher about Mr. Stanley's car did not provide any identifying information. The Ohio Supreme Court has noted "that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration." Maumee v. Weisner, 87 Ohio St. 3d 295, 300 (1999) (citing Alabama v. White, 496 U.S. 325, 329 (1990)). Because Officer Neal also observed Mr. Stanley's driving, this Court does not need to consider whether the driver's tip alone was sufficient to provide him with reasonable suspicion to justify stopping Mr. Stanley's car.
 {¶ 10} Officer Neal testified that he observed Mr. Stanley's car "weaving within its lane." This Court has stated that "[r]epeated weaving within a short distance, even within one's lane, can justify a traffic stop." City of Cuyahoga Falls v. Morris, 9th Dist. No. 18861,1998 WL 487665 at *2 (Aug. 19, 1998). After viewing the video that his police cruiser recorded of Mr. Stanley's driving, Officer Neal testified that Mr. Stanley went "about a quarter of the way" into the other highway lane. He testified that, because there were no vehicles in the other lane, Mr. *Page 5 
Stanley's movement into that lane did not present "a safety concern." He also testified that, but for the dispatch about Mr. Stanley's driving, it would have been a close call regarding whether he would have stopped him.
 {¶ 11} This case is similar to State v. Mittiga, 9th Dist. No. 17616,1996 WL 365017 (July 3, 1996). In Mittiga, a police officer stopped Mr. Mittiga after receiving a dispatch about an alleged intoxicated driver and observing Mr. Mittiga cross a lane line approximately five times.Id. at *1. This Court concluded that the officer's "observation, along with the information received through the radio dispatch, clearly gave [him] specific and articulable information upon which he could reasonably suspect that Mittiga was driving under the influence."Id. at *2.
 {¶ 12} Section 4511.33(A)(1) of the Ohio Revised Code provides that "[a] vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." The Ohio Supreme Court has recently held that "[a] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." State v. Mays, ___ Ohio St. 3d ___, Slip Opinion 2008-Ohio-4539, syllabus. Whether a driver "might have a possible defense to a charge of [driving in marked lanes] is irrelevant [to the] analysis of whether an officer has a reasonable and articuable suspicion to initiate a traffic stop." Id. at ¶ 17. "The phrase `as nearly as is practicable' does not give the driver the option to remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." Id. at ¶ 18. Accordingly, "when *Page 6 
an officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle." Id. at ¶ 20.
 {¶ 13} This Court concludes that the anonymous caller's report that a possibly intoxicated driver had almost collided with his vehicle, Officer Neal's observation that Mr. Stanley was weaving within his lane, and Officer Neal's observation that Mr. Stanley twice crossed the highway lane dividing line and proceeded about a quarter of the way into the other lane were sufficient to give Officer Neal reasonable suspicion that Mr. Stanley had violated Section 4511.33(A)(1) and was operating under the influence. The trial court, therefore, correctly denied his motion to suppress. Mr. Stanley's first assignment of error is overruled.
 SENTENCING {¶ 14} Mr. Stanley's second assignment of error is that the trial court incorrectly sentenced him to a prison term of seven years. He has argued that his sentence does not comply with the consistency in sentencing required by Section 2929.11(B) of the Ohio Revised Code. This Court reviews a trial court's imposition of a criminal sentence for abuse of discretion. State v. Goff, 9th Dist. No. 23292, 2007-Ohio-2735, at ¶ 62 (citing State v. Windham, 9th Dist. No. 05CA0033,2006-Ohio-1544, at ¶ 12).
 {¶ 15} Section 2929.11(B) provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in [R.C. 2929.11(A)], commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." The two "overriding purposes" set forth in Section 2929.11(A) are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). *Page 7 
 {¶ 16} Section 2929.12(A) provides that, "[u]nless otherwise required by [R.C. 2929.13 or R.C. 2929.14], a court that imposes a sentence . . . for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in [R.C. 2929.11]." "Trial courts have full discretion to impose a prison sentence within the statutory range and are no[t] . . . required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." State v. Foster, 109 Ohio St. 3d 1,2006-Ohio-856, at paragraph seven of the syllabus.
 {¶ 17} In exercising its discretion under Section 2929.12(A), the trial court "shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct and the factors provided in [R.C. 2929.12 (D) and (E)] relating to the likelihood of the offender's recidivism." R.C. 2929.12(A). It may also "consider any other factors that are relevant to achieving those purposes and principles of sentencing." Id.
 {¶ 18} The trial court noted that Mr. Stanley had more than five DUI cases over the past 20 years and that he continued to show a pattern of alcohol abuse. Although Mr. Stanley had a permit from a judge granting him occupational driving privileges, he was out drinking and driving at three o'clock in the morning. As the trial court told Mr. Stanley, "[s]o obviously when a judge tells you not to do something, you pretty much continue to do what you want to do anyway." The court noted that Mr. Stanley was "the kind of person that gets behind a wheel of a car, whether or not a judge permits you to or not, . . . and endangers everyone." The court stated that it could not "close its eyes to the fact of the number of prior DUIs." It also took into account that Mr. Stanley had previously "served a prison term for DUI." The court concluded that Mr. Stanley was "a menace" and that "to not sentence [him] to prison would demean the seriousness of the offense and not adequately protect society from future criminal conduct by [Mr. Stanley]." *Page 8 
 {¶ 19} The court was allowed to sentence Mr. Stanley to a prison term of one to five years for his conviction of operating under the influence and one to five years for the prior conviction specification. R.C. 2929.13(G)(2); R.C. 2929.14(A)(3); R.C. 2941.1413(A). The record indicates that the court considered the seriousness and recidivism factors set forth in Section 2929.12(B-E). In light of Mr. Stanley's history of criminal convictions and pattern of alcohol abuse, this Court cannot say that the trial court abused its discretion when it imposed a four year prison term for Mr. Stanley's operating under the influence conviction and a three year prison term for the specification, and determined that the sentences should run consecutively for a total prison term of seven years. Mr. Stanley's second assignment of error is overruled.
 CONCLUSION {¶ 20} Because Officer Neal had a reasonable and articulable suspicion that Mr. Stanley had committed a traffic violation and was operating his vehicle under the influence of alcohol, the trial court correctly denied his motion to suppress. The trial court did not abuse its discretion when it determined the length of Mr. Stanley's sentence and ordered him to serve his prison terms consecutively. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 SLABY, J. CARR, P. J. CONCUR *Page 1